## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **SAMUEL DANIELS,** on behalf of himself and a class of others similarly situated, c/o Cornerstone Law Firm 5821 NW 72nd St. Kansas City, MO 64151 | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **TRADITIONAL LOGISTICS AND CARTAGE, LLC,** a Kentucky limited liability company, *Serve Registered Agent:* InCorp Services, Inc. 2847 S. Ingram Mill Rd., Ste. A100, Springfield, MO 65804 | ) ) ) ) ) ) ) | Case No.: _____ |
| and | ) ) | **COMPLAINT FOR DAMAGES** **Class Action Pursuant to Fed. R. Civ. P. 23** |
| **RCS TRANSPORTATION, LLC, d/b/a RCS TRANSPORTATION OF KENTUCKY, LLC,** a Kentucky Limited Liability Company, *Serve Registered Agent:* InCorp Services, Inc. 2847 S. Ingram Mill Rd., Ste. A100, Springfield, MO 65804 | ) ) ) ) ) ) ) ) ) | |
| and | ) ) | |
| **VALIANT MANAGEMENT AND HOLDINGS, LLC,** a Kentucky limited liability company, *Serve Registered Agent:* Adam Gabbard 122 Citizens Blvd. Simpsonville, KY 40067 | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

COMES NOW Plaintiff Samuel Daniels (hereinafter "Plaintiff"), and on behalf of a class of others similarly situated, by and through his attorneys, and for his cause of action against Defendants Traditional Logistics and Cartage, LLC; RCS Transportation, LLC; and Valiant Management and Holdings, LLC, and states and alleges as follows:

## Parties and Jurisdiction

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq* ("Title VII"), and on 42 U.S.C. § 1981.

2. Plaintiff is a Black citizen of the United States currently domiciled in Kansas City, Jackson County, Missouri.

3. Defendant Traditional Logistics and Cartage, LLC (hereinafter "TLC") is a limited liability company organized under the State of Kentucky with its principal place of business located at 122 Citizens Blvd., Simpsonville, KY 40067.

4. TLC is and was at all relevant times registered and authorized to conduct business in the State of Missouri.

5. TLC is and was at all relevant times engaged in commerce.

6. TLC conducts substantial and continuous business in the State of Missouri.

7. At all relevant times, TLC employed fifteen (15) or more people for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

8. TLC is an employer within the meaning of Title VII.

9. Defendant RCS Transportation, LLC (hereinafter "RCS") is a limited liability company organized in the State of Kentucky with its principal place of business located at 122 Citizens Blvd., Simpsonville, KY 40067.

10. RCS is and was at all relevant times registered and authorized to conduct business in the State of Missouri as RCS Transportation of Kentucky, LLC.

11. RCS is and was at all relevant times engaged in commerce.

12. RCS conducts substantial and continuous business in the State of Missouri.

13. At all relevant times, RCS employed fifteen (15) or more people for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

14. RCS is an employer within the meaning of Title VII.

15. Defendant Valiant Management and Holdings, LLC (hereinafter "Valiant") is a limited liability company organized in the State of Kentucky with its principal place of business located at 122 Citizens Blvd., Simpsonville, KY 40067.

16. Valiant is and was at all relevant times engaged in commerce.

17. Despite not being registered with the Missouri Secretary of State, Valiant conducts substantial and continuous business in the State of Missouri.

18. At all relevant times, Valiant employed fifteen (15) or more people for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

19. Valiant is an employer within the meaning of Title VII.

20. At all times relevant, TLC, RCS, and Valiant (collectively hereinafter "Defendants"), operated out of the same principal place of business.

21. Defendants all also have conducted and/or maintained and/or managed a place of business located at 12801 NE 41st Street, Kansas City, Clay County, Missouri 64161.

22. Management and administrative decisions for Defendants TLC and RCS are performed by Defendant Valiant.

23. Defendants' most recent annual reports were all signed by Jim Brinkworth, identified as the Chief Financial Officer for each Defendant.

24. Jim Brinkworth also serves as Chief Financial Officer for related entities N to N Construction, LLC (hereinafter "N to N"), Titan Transportation, LLC (hereinafter "Titan"), and New Model Logistics, LLC (hereinafter "New Model"),

25. Upon information and belief, Plaintiff alleges that the Chief Executive Officer and Chief Operations Officer are also common among Defendants.

26. Defendants are listed on the same workers' compensation insurance policy, as identified with the Missouri Department of Labor and Industrial Relations, associated with TLC's place of business within Missouri.

27. Additional related entities N to N and New Model, are also associated with Defendants' workers' compensation insurance policy.

28. Defendant Valiant is also listed on the same workers' compensation insurance policy, as identified with the Missouri Department of Labor and Industrial Relations, as another related entity Titan, and is associated with Titan's places of business within Missouri.

29. Defendants RCS and Valiant share a common LLC member, Bruce Nethery, who is the sole LLC member of Valiant.

30. Bruce Nethery is also an LLC member of related entity N to N.

31. Defendants all provide various logistics solutions for the automotive and/or railroad industries.

32. Specifically, Defendants TLC and RCS all provide some or all of the following services:

    a. Bridge plate repair;

    b. Maintenance and repair of customer equipment;

c.  Railcar repair and switching;

d.  Facility and grounds maintenance;

e.  Drive away services;

f.  Inspection and repair of rail track;

g.  Autorack loading and unloading;

h.  Offsite inventory control and management;

i.  Release and shuttle of inventory at origin plants; and

j.  Management of the customer's facility.

33.  Related entities N to N and Titan provide many of the same services as Defendants TLC and RCS.

34.  The "splash pages" for the URLs for Defendants[1] are all substantially similar, using the same industry images and virtually identical language, including, under the "What We Do" section:

a.  that Defendants "provide[] Management, IT System Support, Loss Prevention Services which includes but not limited to Safety Training, Quality Training, as well as Auditing and Claims Investigation. We use the latest in GPS technology and voice transmission recordings to assist in investigations and accountability. Training and Loss Prevention techniques are designed to address incidents before they occur."

---

[1] *See* Exhibit 1, incorporated herein by reference. Welcome To Traditional Logistics and Cartage, LLC, https://www.traditionallc.com/index.php (last visited Oct. 9, 2020); Exhibit 2, incorporated herein by reference. Welcome To RCS Transportation, LLC, https://www.rcstran.com/index.php (last visited Oct. 9, 2020); Exhibit 3, incorporated herein by reference. WELCOME TO VALIANT MANAGEMENT & HOLDINGS, LLC, https://www.valiantmh.com/index.php (last visited Oct. 9, 2020).

b. that Defendants' "facility managers are issued mobile devices to ensure real-time receipt of and response to customer emails and communications."

c. that Defendants' "managers[2] are involved in company decisions which encourages pride in their performance."

35. The "splash page" for the URL for related entity Titan is substantially similar to those of Defendants.

36. Defendant Valiant's website also includes pages dedicated to services provided by Defendants TLC[3] and RCS[4], containing virtually identical language, including:

a. that Defendants TLC's and RCS's "operations are supported by Valiant [], whose management systems are registered to ISO 9001, ISO14001 and OHSAS 18001.Training scheduled by Valiant []."

b. that Defendants TLC and RCS claim to "provide high quality and good-valued service to automotive manufacturers and Class I railroads."[5]

37. Defendant Valiant's website also includes pages dedicated to services provided by related entities N to N and Titan which are substantially similar to the pages dedicated to services provided by Defendants TLC and RCS.

---

[2] Valiant uses the word "associates" instead of "managers." *See* Exhibit 3.
[3] *See* Exhibit 4, incorporated herein by reference. Traditional Logistics and Cartage, https://www.valiantmh.com/tlc.php (last visited Oct. 9, 2020).
[4] *See* Exhibit 5, incorporated herein by reference. RCS Transportation LLC, https://www.valiantmh.com/rcs.php (last visited Oct. 9, 2020).
[5] *See* Exhibit 3.

38. The websites for Defendants TLC[6] and RCS[7] have "About Us" pages that are all substantially similar, using the same industry images and virtually identical language, including, the same assertions that they "provide high quality and good-valued service to automotive manufacturers and Class I railroads."

39. The website for related entity Titan has an "About Us" page that is substantially similar to those for Defendants TLC and RCS.

40. At all times relevant, Defendants operated as a single enterprise at the same business location with substantial interrelation of operations, common management, and common control over personnel practices, centralized control of labor operations, and common ownership and/or financial control.

41. Defendants qualify as joint employers of Plaintiff and/or a common enterprise during the time of Plaintiff's employment.

42. Jurisdiction is proper in the Western District of Missouri pursuant to 28 U.S.C. § 1331 as some or all of Plaintiff's claims arise under the laws of the United States.

43. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

### Administrative Procedures

44. On or about June 26, 2019, Plaintiff timely filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") a Charge of

---

[6] *See* Exhibit 6, incorporated herein by reference. Traditional Logistics and Cartage, https://www.traditionallc.com/tlc.php (last visited Oct. 9, 2020).
[7] *See* Exhibit 7, incorporated herein by reference. RCS Transportation LLC, https://www.rcstran.com/rcs.php (last visited Oct. 9, 2020).

Discrimination against TLC alleging class-wide claims of discrimination based on race and sex (attached as Exhibit 8 and incorporated herein by reference).

45.   On or about December 19, 2019, Plaintiff filed an Amended Charge of Discrimination with the EEOC and MCHR, including Defendants RCS and Valiant as Respondents (attached as Exhibit 9 and incorporated herein by reference).

46.   Substantial identity exists between and among Defendants.

47.   On or about July 30, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue in relation to his Amended Charge of Discrimination filed against Defendants (attached as Exhibit 10 and incorporated herein by reference).

48.   The aforesaid Charges of Discrimination provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the MCHR or EEOC investigation which could reasonably be expected to have grown out of the Charges of Discrimination.

49.   This lawsuit is filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

50.   Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

51.   This action is filed within the applicable statute of limitations.

## Additional Factual Allegations

52.   Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

53.   Plaintiff is a Black male.

54. TLC provides drive away services for Ford Motor Company at its Claycomo, Missouri, manufacturing facility.

55. TLC categorizes those individuals it employs to perform drive away services at Ford Motor Company's Claycomo, Missouri, manufacturing facility as either Casual Drivers or Full-Time Drivers.

56. Plaintiff began his employment with Defendant TLC in approximately early 2018 as a casual driver.

57. Because of the unity of identity between and among Defendants, Plaintiff began his employment with Defendants in approximately early 2018 as a casual driver.

58. Plaintiff alleges upon information and belief that Defendant RCS similarly categorizes those employees performing drive away service-related duties as either Casual Drivers or Full-Time Drivers, or in some substantially similar manner of differentiation.

59. Both Casual Drivers and Full-Time Drivers for TLC transport Transit vehicles from Ford Motor Company's Claycomo, Missouri, facility to offsite locations.

60. Plaintiff alleges upon information and belief that RCS provides substantially similar services to Ford Motor Company with F-150 vehicles manufactured at the Claycomo, Missouri, facility.

61. At all relevant times, TLC has categorized Plaintiff as a Casual Driver.

62. Casual Drivers are only called into work on an as-needed basis.

63. Casual Drivers do not receive the same benefits that Full-Time Drivers receive.

64. Casual Drivers are not eligible to join the Union.

65. As of May 2019, TLC employed approximately seventy (70) to eighty (80) Casual Drivers.

66. At that time, approximately twenty-five (25) to thirty-five (35) (or approximately thirty-one percent (31%) to fifty percent (50%)) of the Casual Drivers were Black.

67. As of May 2019, TLC employed approximately ninety-six (96) Full-Time Drivers.

68. At that time, approximately thirteen (13) (or approximately fourteen percent (14%)) of the Full-Time Drivers were Black.

69. Upon information and belief, Plaintiff alleges that neither the overall number of TLC employees working at Ford Motor Company's Claycomo, Missouri, facility nor the proportion of Black employees working as either Casual Drivers or Full-Time Drivers employed there have substantially changed since May 2019.

70. Upon information and belief, most of the Black Full-Time Drivers at Ford Motor Company's Claycomo, Missouri, facility were hired when TLC first began contracting with Ford Motor Company in approximately 2014 or 2015, when TLC needed to hire a large number of employees in a short time span.

71. Approximately once each year, TLC goes through a "hiring" process at Ford Motor Company's Claycomo, Missouri, facility, in which Casual Drivers are transitioned to Full-Time Drivers.

72. In 2018, three (3) Casual Drivers were "hired" as Full-Time Drivers by TLC at Ford Motor Company's Claycomo, Missouri, facility.

73. None of the Casual Drivers "hired" as Full-Time Drivers by TLC at Ford Motor Company's Claycomo, Missouri, facility in 2018 were Black.

74. In 2019, five (5) Casual Drivers were "hired" as Full-Time Drivers by TLC at Ford Motor Company's Claycomo, Missouri, facility.

75. None of the Casual Drivers "hired" as Full-Time Drivers by TLC at Ford Motor Company's Claycomo, Missouri, facility in 2019 were Black.

76. In 2017, three (3) Casual Drivers were "hired" as Full-Time Drivers by TLC at Ford Motor Company's Claycomo, Missouri, facility.

77. None of the Casual Drivers "hired" as Full-Time Drivers by TLC at Ford Motor Company's Claycomo, Missouri, facility in 2017 were Black men.

78. TLC's "hiring" process is not based on any application process, as TLC chooses which employees to hire as Full-Time Drivers.

79. TLC does not have a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers.

80. The employees whom TLC chooses to hire as Full-Time Drivers are not chosen based on merit or seniority.

81. For example, in 2019, three (3) white employees were "hired" as Full-Time Drivers, despite all three having less seniority than Plaintiff and other Black Casual Drivers.

82. Additionally, TLC threatened to terminate a non-Black employee from his position as a Casual Driver when said employee refused to accept a position as a Full-Time Driver rather than offering the position to a more qualified, more senior Black Casual Driver.

83. At all times relevant, Plaintiff has received positive performance reviews.

84. TLC has never offered Plaintiff a position as a Full-Time Driver.

85. TLC has repeatedly "hired" less qualified non-Black Casual Drivers with less seniority over more qualified, more senior Black Casual Drivers.

86. Upon information and belief, Plaintiff alleges that TLC engages in the same "hiring" practices at the other facilities where it provides drive away services.

87.  Upon information and belief, Plaintiff alleges that Defendant RCS engages in the same "hiring" practices at the other facilities where it provides drive away services.

88.  Upon information and belief, Plaintiff alleges that Defendants TLC's and RCS's "hiring" practices are established according to Defendant Valiant's management policies and procedures.

89.  The "hiring" process used by Defendants is a pattern and practice of intentional discrimination against Black employees pervasive throughout the enterprise, and/or is a pattern and practice that results in discrimination against Black employees.

### Class Action Allegations

90.  All counts in this Petition are brought against Defendants under FED. R. CIV. P. 23 as a nation-wide class action.

91.  Plaintiff seeks relief individually and on behalf of a class of others similarly situated and brings the below claims on behalf of two classes.

92.  Class I is defined as: Black employees working for Defendants as Casual Drivers (or other substantially similar positions) who were not offered positions as Full-Time Drivers (or other substantially similar positions) between August 30, 2018, and the present.

93.  Class II is defined as: Black employees working for Defendants as Casual Drivers (or other substantially similar positions) who were not offered positions as Full-Time Drivers (or other substantially similar positions) between October 28, 2016, and the present.

94.  All class members are similarly situated to Plaintiff in that they are Black employees of Defendants who were passed over for the opportunity to transition into working as Full-Time employees in favor of other non-Black employees.

95.  Plaintiff's class claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

96. The classes satisfy the numerosity standards as it is believed to number in the hundreds. TLC alone employs approximately thirty (30) potential class members at Ford Motor Company's Claycomo, Missouri, facility alone. Overall, Defendants have employees at twenty-seven (27) facilities in at least twelve states., As a result, joinder of all class members in a single action is impracticable. The class members can be easily identified through records maintained by Defendants. Class members may be informed of the pendency of this class action through direct mail, electronic mail, or other appropriate means.

97. There are questions of law or fact common to the Classes, which common issues predominate over any issues involving only individual class members. The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

   a. Whether Defendants engaged in a pattern and practice of discriminating against Black Casual Drivers;

   b. Whether class members' race (or the intersection of class members' race and sex) was a motivating factor in the adverse employment actions;

   c. Whether Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against Casual Drivers, including race and/or sex discrimination under Title VII;

   d. Whether Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII;

   e. Whether Defendants encourage, condone, and/or ratify through both action and inaction, a discriminatory environment against Black Casual Drivers; and

f.   Whether Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others.

98.   The aforementioned common questions predominate over any questions affecting individual persons, and a class action is proper as it relates to consistency, economy, efficiency, fairness, and equity.

99.   The claims of Plaintiff as the Class Representative are typical of those of the class because all claims are based on the same facts and legal theories in that class members were Black Casual Drivers who were passed over for the opportunity to "hire" on as Full-Time Drivers in favor of non-Black employees despite having seniority over other such employees and being similarly situated with respect to job duties and performance.

100.   A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying results, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

101.   Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. The interests of the members of the class will be fairly and adequately protected by Plaintiff and his undersigned counsel.

102.   Maintenance of this action as a class action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent

adjudications, while a single class action can determine the rights of all class members in conformity with the interest of efficiency and judicial economy.

**COUNT I**
**Violation of 42 U.S.C. §§ 2000e *et seq*.**
**Race Discrimination – Failure to Promote**
**(Class I)**

103.   Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

104.   Plaintiff and others similarly situated are members of a protected class because they are Black.

105.   Plaintiff and others similarly situated were otherwise qualified to be Full-Time Drivers for Defendants.

106.    Defendants chose not to promote Plaintiff and others similarly situated to the Full-Time Driver position.

107.   Defendants failed to utilize a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers.

108.   Defendants failed to utilize an application system for Casual Drivers to apply to become Full-Time Drivers.

109.   Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers rendered any attempt to apply for a Full-Time Driver position futile for Plaintiff and others similarly situated.

110.   The race of Plaintiff and others similarly situated was at least a motivating factor in Defendants' decision to not promote them.

111.  At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

112.  Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including race discrimination.

113.  Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

114.  As shown by the foregoing, as a result of their race, Plaintiff and others similarly situated suffered intentional discrimination at the hands of Defendants in violation of Title VII.

115.  As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have been deprived of income, as well as other monetary and non-monetary benefits.

116.  As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

117.  By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff and others similarly situated.

118.  Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff and others similarly situated, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

119. Pursuant to the provisions of Title VII, Plaintiff and others similarly situated are entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff and others similarly situated request that the Court enter judgment in their favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation of 42 U.S.C. §§ 2000e *et seq*.
### Race Discrimination – Failure to Upgrade
### (Class I)

120. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

121. Plaintiff and others similarly situated are members of a protected class because they are Black.

122. Plaintiff and others similarly situated were otherwise qualified to be Full-Time Drivers for Defendants.

123. Defendants chose not to upgrade Plaintiff and others similarly situated to the Full-Time Driver position.

124. The race of Plaintiff and others similarly situated was at least a motivating factor in Defendants' decision to not upgrade their statuses to Full-Time Driver.

125. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the

scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

126. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including race discrimination.

127. Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

128. As shown by the foregoing, as a result of their race, Plaintiff and others similarly situated suffered intentional discrimination at the hands of Defendants in violation of Title VII.

129. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have been deprived of income, as well as other monetary and non-monetary benefits.

130. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

131. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff and others similarly situated.

132. Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff and others similarly situated, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

133. Pursuant to the provisions of Title VII, Plaintiff and others similarly situated are entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff and others similarly situated request that the Court enter judgment in their favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Violation of 42 U.S.C. § 1981**
**Race Discrimination – Failure to Promote**
**(Class II)**

134. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

135. Plaintiff and others similarly situated are members of a protected class because they are Black.

136. Plaintiff and others similarly situated were otherwise qualified to be Full-Time Drivers for Defendants.

137. Defendants chose not to promote Plaintiff and others similarly situated to the Full-Time Driver position.

138. Defendants failed to utilize a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers.

139. Defendants failed to utilize an application system for Casual Drivers to apply to become Full-Time Drivers.

140. Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers rendered any attempt to apply for a Full-Time Driver position futile for Plaintiff and others similarly situated.

141. The race of Plaintiff and others similarly situated was a determining factor in Defendants' decision to not promote them.

142. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

143. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including race discrimination.

144. Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including federal law.

145. As shown by the foregoing, as a result of their race, Plaintiff and others similarly situated suffered intentional discrimination at the hands of Defendants in violation of federal law.

146. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have been deprived of income, as well as other monetary and non-monetary benefits.

147. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

148.  By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff and others similarly situated.

149.  Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff and others similarly situated, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

150.  Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff and others similarly situated are entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff and others similarly situated request that the Court enter judgment in their favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Violation of 42 U.S.C. § 1981
### Race Discrimination – Failure to Upgrade
### (Class II)

151.  Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

152.  Plaintiff and others similarly situated are members of a protected class because they are Black.

153.  Plaintiff and others similarly situated were otherwise qualified to be Full-Time Drivers for Defendants.

154.  Defendants chose not to upgrade Plaintiff and others similarly situated to the Full-Time Driver position.

155.  The race of Plaintiff and others similarly situated was a determining factor in Defendants' decision to not upgrade their statuses to Full-Time Driver.

156.  At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

157.  Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including race discrimination.

158.  Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including federal law.

159.  As shown by the foregoing, as a result of their race, Plaintiff and others similarly situated suffered intentional discrimination at the hands of Defendants in violation of federal law.

160.  As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have been deprived of income, as well as other monetary and non-monetary benefits.

161.  As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

162.  By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff and others similarly situated.

163. Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff and others similarly situated, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

164. Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff and others similarly situated are entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff and others similarly situated request that the Court enter judgment in their favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT V</u>**
**Violation of 42 U.S.C. §§ 2000e *et seq*.**
**Disparate Impact: Race – Failure to Promote**
**(Class I)**

165. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

166. Plaintiff and others similarly situated are members of a protected class because they are Black.

167. Plaintiff and others similarly situated were otherwise qualified to be Full-Time Drivers for Defendants.

168. Defendants chose not to promote Plaintiff and others similarly situated to the Full-Time Driver position.

169. Defendants failed to utilize a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers.

170. Defendants failed to utilize an application system for Casual Drivers to apply to become Full-Time Drivers.

171. To the extent it is not intentionally discriminatory, Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers amounts to an identifiable, facially-neutral personnel policy or practice.

172. Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers is not related to the job of Full-Time Drivers.

173. Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers is not consistent with a business necessity of Defendants.

174. Black Casual Drivers such as Plaintiff and others similarly situated are promoted to Full-Time Driver at a rate statistically significantly lower than non-Black Casual Drivers.

175. A causal connection exists between Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers, and the disparate effect on Black Casual Drivers such as Plaintiff and others similarly situated.

176. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or

ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

177. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have been deprived of income, as well as other monetary and non-monetary benefits.

178. Pursuant to the provisions of Title VII, Plaintiff and others similarly situated are entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff and others similarly situated request that the Court enter judgment in their favor and against Defendants for equitable relief, including but not limited to back-pay, front-pay and injunctive relief, including but not limited to the development of a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT VI</u>**
**Violation of 42 U.S.C. §§ 2000e *et seq*.**
**Disparate Impact: Race – Failure to Upgrade**
**(Class I)**

179. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

180. Plaintiff and others similarly situated are members of a protected class because they are Black.

181. Plaintiff and others similarly situated were otherwise qualified to be Full-Time Drivers for Defendants.

182. Defendants chose not to upgrade the positions of Plaintiff and others similarly situated to Full-Time Driver.

183.   Defendants failed to utilize a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers.

184.   Defendants failed to utilize an application system for Casual Drivers to apply to become Full-Time Drivers.

185.   To the extent it is not intentionally discriminatory, Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers amounts to an identifiable, facially-neutral personnel policy or practice.

186.   Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers is not related to the job of Full-Time Drivers.

187.   Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers to apply to become Full-Time Drivers is not consistent with a business necessity of Defendants.

188.   The positions of Black Casual Drivers such as Plaintiff and others similarly situated are upgraded to Full-Time Driver at a rate statistically significantly lower than those of non-Black Casual Drivers.

189.   A causal connection exists between Defendants' failure to utilize a documented system or standard for selecting Full-Time Drivers and their failure to utilize an application system for Casual Drivers, and the disparate effect on Black Casual Drivers such as Plaintiff and others similarly situated.

190.   At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope

and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

191. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and others similarly situated have been deprived of income, as well as other monetary and non-monetary benefits.

192. Pursuant to the provisions of Title VII, Plaintiff and others similarly situated are entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff and others similarly situated request that the Court enter judgment in their favor and against Defendants for equitable relief, including but not limited to back-pay, front-pay and injunctive relief, including but not limited to the development of a documented system or standard for selecting which Casual Drivers to "hire" as Full-Time Drivers; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: */s/ Joshua P. Wunderlich*
M. Katherine Paulus   MO BAR 60217
m.paulus@cornerstonefirm.com
Joshua P. Wunderlich MO BAR 64254
j.wunderlich@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone            (816) 581-4040
Facsimile            (816) 741-8889

ATTORNEYS FOR PLAINTIFF