IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SAMUEL DANIELS, ON BEHALF OF HIMSELF AND A CLASS OF OTHERS SIMILARLY SITUATED; AND LETICIA ANDERSON, <br><br> Plaintiffs, <br><br> v. <br><br> TRADITIONAL LOGISTICS AND CARTAGE, LLC, A KENTUCKY LIMITED LIABILITY COMPANY; et al; <br><br> Defendants. | Case No. 4:20-00869-CV-RK |

## ORDER

Before the Court is Defendants' motion to dismiss Plaintiff Anderson's Title VII claims. (Doc. 48.) The motion is fully briefed. (Docs. 49, 53, 63.) For the reasons below, the motion is **DENIED.**

### Background[1]

Plaintiffs Daniels and Anderson allege putative class action race discrimination claims against Traditional Logistics and Cartage, LLC ("TLC"), RCS Transportation, LLC ("RCS"), and Valiant Management and Holdings, LLC ("Valiant") (jointly "Defendants"), who Plaintiffs allege are their joint employers and/or a common enterprise. (Doc. 41 at ¶¶ 1, 4, 10, 16, 42.) Plaintiffs are black. (*Id.* at ¶ 54.) TLC provides drive away services for Ford Motor Company at its Claycomo, Missouri, manufacturing facility. (*Id.* at ¶ 55.) TLC categorizes the people it employs to perform drive away services as either casual drivers or full-time drivers. (*Id.* at ¶ 56.) Plaintiffs began their employment with TLC in approximately early 2018 as casual drivers. (*Id.* at ¶¶ 57-58.) Casual drivers are only called into work on an as-needed basis; do not receive the same benefits that full-time drivers receive; and are not eligible to join the union. (*Id.* at ¶¶ 64-66.)

---

[1] The Court assumes the allegations in the Amended Complaint (Doc. 41) are true and draws additional facts from documents that are referenced in the Amended Complaint and attached to Plaintiff's prior filings (Docs. 1-1 through 1-10). These documents are "embraced by the complaint" and may be considered in ruling on a motion to dismiss. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation marks and citations omitted).

Approximately once each year, TLC goes through a "hiring" process at Ford Motor Company's Claycomo, Missouri, facility in which casual drivers are transitioned to full-time drivers. (*Id.* at ¶ 73.) Plaintiffs allege that the "hiring" process used by Defendants is a pattern or practice of intentional discrimination against black employees pervasive throughout the enterprise, and/or is a pattern or practice that results in discrimination against black employees. (*Id.* at ¶ 91.) For example, although Plaintiffs have received positive performance reviews at all relevant times, TLC has never offered either Plaintiff a position as a full-time driver. (*Id.* at ¶¶ 85-86.) TLC has repeatedly "hired" less qualified non-black casual drivers with less seniority over more qualified, more senior black casual drivers. (*Id.* at ¶ 87.)

Plaintiff Daniels dually filed an amended charge of discrimination against Defendants with the Equal Opportunity Employment Commission ("EEOC") and a complaint with the Missouri Commission on Human Rights ("MCHR"). (Doc. 1-9.) Both were timely filed. On the EEOC charge form, Plaintiff Daniels checked boxes for "race" and "sex" discrimination. (*Id.*) On July 30, 2020, the EEOC sent Plaintiff Daniels a letter stating it was terminating its processing of his charge and notifying him that he had a right to sue in court. (Doc. 1-10.)

On October 28, 2020, Plaintiff Daniels filed the present lawsuit in this Court, a putative class action alleging race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Doc. 1) On August 18, 2021, Plaintiffs filed an amended complaint, adding Plaintiff Anderson. (Doc. 41.) Thereafter, Defendants filed this motion to dismiss, arguing Plaintiff Anderson's Counts I, II, V, and VI (Title VII race discrimination claims) in the amended complaint fail to state a claim upon which relief may be granted, because she failed to exhaust administrative remedies, which is a prerequisite to seeking judicial relief. (Doc. 48.)

## Legal Standard

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (citation and quotation marks omitted).

## Discussion

Defendants argue Plaintiff Anderson failed to exhaust administrative remedies on her Title VII race discrimination claims because Daniels's amended charge was plainly directed at and is limited to alleged discrimination against black males and did not contemplate discrimination against black females. Defendants argue the amended charge amounted to a complaint of discrimination based on race plus sex, and the EEOC investigated the matter as such.

A plaintiff alleging discrimination under Title VII must exhaust administrative remedies before filing in federal court. 42 U.S.C. § 2000e–5(e)(1); *see, Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). "The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). "Exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994). However, "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Parisi*, 400 F.3d at 585.

Striking a balance between the purpose for requiring the exhaustion of administrative remedies and the remedial purposes of legislation prohibiting unlawful employment practices, "[a] plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 608 (8th Cir. 2018) (citation and quotation marks omitted). "The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 536 (8th Cir. 2018) (quotation marks and citation omitted). "Failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Id.* at 534.

Here, Plaintiff Daniels's amended charge, drafted and filed with assistance of counsel, checked the box for discrimination based on race and the box for discrimination based on sex. The narrative of the charge form spans just over three pages and indicates that Daniels is a member of

a protected class "because of my race, African American, and [his] sex, male" and that his claim is a "claim of race and sex discrimination[.]" (Doc. 1-9 at 3.)

The narrative goes on to discuss the percentage of casual drivers and full-time drivers employed by TLC who "are black," then the two rounds of "hiring" Daniels had observed during his employment, during which none of the eight casual drivers who were transitioned to full-time drivers were "black[.]" (*Id.*)

The narrative indicates in 2017, the year prior to Daniels's employment with Defendants, two of the three employees transitioned to full-time were "black females, but none were black males." (*Id.* at 4.) The amended charge further reads that Daniels understood "most of the black males that are employed by TLC as Full-Time Drivers started as such when TLC first began contracting for Ford Motor Company four to five years ago when they needed a large number of employees in a very short timeframe." (*Id.*) The amended charge complains that in 2019, Defendants transitioned "[t]hree white males, all with less seniority than [Daniels]," to full-time. (*Id.*)

The amended charge says, "[d]espite consistently receiving positive performance reviews, neither myself nor another black employee who has worked for TLC for over three years with good job performance has ever been asked to become a Full-Time employee." (*Id.*)

The amended charge then has a "Class Allegations" section, which begins by stating: "I am under the information and belief that Respondents have engaged in a pattern or practice of refusing to hire black male employees as Full-Time based on their race and sex beginning in at least 2017 and continuing through the present." (*Id.*) The Class Allegations section alleges a pattern or practice or "race and sex" discrimination having a disparate impact on "black, male" employees and consisting of refusing to hire "black male" employees into full-time positions. (*Id.*)

The Class Allegations section alleges the pattern or practice also consists of refusing to hire based on a system relying on merit or seniority, which had a disparate impact on "black" employees who had equal or superior seniority or job performance compared to other "non-black" employees. (*Id.*) The section posits members of the class are similarly situated in that "[a]ll are black, and most are men;" and they were not given the chance to transition to full-time whereas "other non-black and/or female" employees with similar seniority and performance were. (*Id.*) The section then summarizes: " I am a member of a protected class . . . because of my race" and Defendants "discriminated against me on the basis of my race and sex." (*Id.*)

Defendants argue this case is analogous to *Ulvin v. Northwestern National Life Insurance Company*, 943 F.2d 862, 865 (8th Cir. 1991), because Daniels's amended charge is too narrow to support Anderson's discrimination claims. (Doc. 49 at 9.) While cognizant of the *Ulvin* Court's admonition that "there must be some limit to what claims an opt-in party can raise when relying on the administrative filing of another," the Court disagrees with Defendants, finding this case distinguishable.[2]

In *Ulvin*, the plaintiff filed a charge on which various other plaintiffs sought to "piggyback" (that is, to satisfy the exhaustion of administrative remedies requirement with the initial plaintiff where they had not filed their own administrative charges). 943 F.2d at 864. Six of the piggybacking plaintiffs brought claims based on the defendant's early retirement program. *Id.* While Ulvin's charge stated that a general pattern and practice of age discrimination existed, it further alleged only that the defendant had demoted and subsequently fired Ulvin because of his age. *Id.* It did not mention any claims based on the early retirement program or mention that defendant had coerced older employees into accepting early retirement. *Id.* at 864 n.2. Further, Ulvin was not eligible to participate in the early retirement program and was terminated seven days before the deadline for eligible employees to announce their decision about the program. *Id.* at 865. No early retiree filed a charge with the EEOC until almost a year after the deadline. The Eighth Circuit accordingly did not permit the early retirees to piggyback their claims on Ulvin's charge, holding (1) Ulvin's EEOC charge did not alert the defendant to the early retirees' claims or create the possibility that the EEOC or the defendant would attempt to conciliate those claims,

---

[2] Defendant also purports to rely on *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1034 (5th Cir. 1980) for its argument that "[w]hen a claim is asserted based upon race plus gender, the claim is specific to an individual of that specific race and gender only." (Doc. 49 at 12.) *Jeffries*, however, stands for a principle more in keeping with the liberal remedial purposes of Title VII, holding "when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff." 615 F.2d at 1034. The *Jeffries* Court remanded the issue of the plaintiff's claim of discrimination on the basis of "both race and sex" where the district court "did not consider [the plaintiff]'s claim of discrimination on the basis of both race and sex, and because its treatment of [the defendant]'s defensive evidence impermissibly placed [the plaintiff] in the same class as black males and white females[.]" *Id.* at 1035. The recognition and acceptance of sex-plus-race discrimination claims and their proper analysis set forth in *Jeffries* is just that; the rationale of *Jeffries* does not bar separate claims for race discrimination and for sex-plus-race discrimination, both of which appear to be at issue in the instant case. *Jeffries* did not involve analysis of the exhaustion of administrative remedies, but rather, analyzed a sex-plus-race claim on its merits.

5

and (2) Ulvin's EEOC charge was too narrow to support the discrimination claims of the early retirees.  *Id.* at 865–66.

Here, on the other hand, the Court finds the race box being checked on the amended charge, the narrative section's many references to "black" employees, the Class Allegations section alleging the pattern or practice having a disparate impact on "black" employees who had equal or superior seniority or job performance compared to other "non-black" employees, as well as the statement that the class members are similarly situated in that "[a]ll are black," sufficiently gave Defendants "notice of all claims of discrimination[.]"  *Tart*, 31 F.3d at 671.  The Court finds that although the claim in the amended charge could have been more specific given its additional numerous complaints as to "black males," the Court's reading of the amended charge to include race claims is not so liberal as to constitute "inventing, *ex nihilo*, a claim which simply was not made."  *Parisi*, 400 F.3d at 585.  Plaintiff Anderson's Title VII claims are, at least, "like or reasonably related to the substance" of Plaintiff Daniels's amended charge timely brought before the EEOC, *Lindeman*, 899 F.3d, 608, and no broader than "the scope of the EEOC investigation which reasonably could be expected to result from" Daniels's amended charge.  *Kirklin*, 911 F.3d at 536.

Accordingly, the Court believes an EEOC investigation into race discrimination reasonably could be expected to result from the timely filed amended charge, and the Court is not persuaded that Defendants were not on adequate notice of a race discrimination claim from the amended charge.

## Conclusion

Accordingly, Defendants' motion to dismiss (Doc. 48) is **DENIED.**

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  November 12, 2021